O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| MARVIN L. STEWART,<br><br>    Plaintiff,<br><br>    v.<br><br>GAVIN NEWSOME et al.,<br><br>    Defendants. | Case № 2:24-cv-08519-ODW (AGRx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [18]** |

## I.  INTRODUCTION

Plaintiff Marvin L. Stewart, pro se, brings this action seeking declaratory and injunctive relief against Defendants California Governor Gavin Newsome and Attorney General Robert Andres Bonta, in their official capacities.  (First Am. Compl. ("FAC") ¶¶ 1–2, 13–14, ECF No. 14.)  Defendants move to dismiss Stewart's claims under Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(1), 12(b)(6), and 8(a)(2).  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 18.)  For the reasons below, the Court **GRANTS** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND[2]

The First Amended Complaint is far from clear. As best as the Court can tell, Stewart challenges two California laws: Senate Bill ("SB") 54 and SB 1174 as violating the Guarantee Clause and the Supremacy Clause, and the First, Fifth, Ninth, Tenth, Fourteenth, Fifteenth, Seventeenth, Nineteenth, Twentieth, Twenty-Third, and Twenty-Fourth Amendments to the U.S. Constitution. (*See* FAC ¶¶ 4, 11–12, 16–17, 70.) Stewart also alleges that Defendants violated federal law and the California Constitution. (*See id.* ¶¶ 4, 9.)

In 2017, California Governor Jerry Brown signed SB 54, or the California Values Act, California Government Code section 7282 *et seq.*, into law. (*Id.* ¶ 16.) That law prohibits California state and local law enforcement agencies from spending public funds to enforce federal immigration laws. *See, e.g.*, Cal. Gov't Code § 7284.6(a) (prohibiting use of agency funds to "investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes"). Stewart characterizes the law as "declaring the State of California a sanctuary state." (FAC ¶ 16.) According to Stewart, this law has placed a "heavy burden . . . on California taxpayers" by "draining . . . public resources" through "giving illegal aliens more taxpayer-funded handouts than ever before." (*Id.* ¶ 19.) In addition to these "financial" harms, Stewart alleges that the California Values Act "has cost innocent lives." (*Id.* ¶ 23.) Per Stewart, through this law, Defendants "have become complicit with the drug cartels in conjunction with China in allowing [U.S.] citizens to be murdered by these toxic opioids, such as Fentanyl mixed with Xylazine, and other deadly contrabands." (*Id.* ¶ 24.) Further, Defendants have "allowed China in our Front-yard and Backyard, with their Chinese money laundering organizations that enriches the Cartels." (*Id.*) Stewart alleges that the California Values Act violates various provisions of the U.S. Constitution, including the Guarantee Clause. (*See,*

---

[2] All factual references derive from the FAC, as well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*e.g.*, *id.* ¶ 31); U.S. Const. art. IV, § 4 ("The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.").

On September 29, 2024, Newsome signed SB 1174 into law, which prohibits cities and counties from adopting any ordinance or other regulation requiring "a person to present identification for the purpose of voting or submitting a ballot at any polling place, vote center, or other location where ballots are cast or submitted, unless required by state or federal law." 2024 Cal. Stat. 7948 (codified at Cal. Elec. Code § 10005); (*see* FAC ¶ 17.) That law took effect on January 1, 2025. *See* Cal. Const. art. IV, § 8(c)(1) (providing that "a statue enacted at a regular session shall go into effect on January 1 next following a 90-day period from the date of enactment of the statute"); (FAC ¶ 67 (noting effective date).) Stewart appears to contend that this law allowed "approximately 1.5 million non-citizens" to vote in the 2024 election, which has "disparage[d]" his "right to vote." (FAC ¶ 9.) Stewart alleges that this "negat[ion]" of "the integrity of" his vote violated the First, Fifth, Ninth, Tenth, Fourteenth, Fifteenth, Seventeenth, Nineteenth, Twentieth, Twenty-Third, and Twenty-Fourth Amendments to the U.S. Constitution, as well as provisions of the California Constitution and federal law. (*Id.* ¶ 70.)

On October 3, 2024, Stewart initiated this action against Defendants. (Compl., ECF No. 1.) On November 20, 2024, Stewart filed the operative First Amended Complaint. (FAC.) As relief, Stewart first asks for a declaration that Defendants "do[] not have the authority" to "prohibit[] law enforcement and officials from enforcing" immigration laws. (*Id.*, Prayer ¶ 1.) Second, he asks for a declaration that he has "the Constitutional Right Under the Ninth Amendment to Compel" Defendants "to honor the obligation of their oaths and defend[] this Nation and the State of California from foreign invasion." (*Id.*, Prayer ¶ 2.) Third, he asks for a declaration that he "has been injured, by having his vote disparage[d] by illegal aliens, and non-

citizens, that have been allowed to vote in th[e] 2024 election." (*Id.*, Prayer ¶ 3.) Fourth, he seeks injunctive relief preventing Defendants from declaring California "a Sanctuary State and defend the citizens from harm committed by criminal illegal aliens, and non-citizens being allowed to vote." (*Id.*, Prayer ¶ 4.)

Defendants now move to dismiss Stewart's claims under Rules 12(b)(1), 12(b)(6), and 8(a)(2). (Mot.). The Motion is fully brief. (Opp'n, ECF No. 19; Reply, ECF No. 22.)

### III.   LEGAL STANDARD

As the Court finds that Stewart lacks Article III standing to bring the First Amended Complaint, it addresses only the legal standard for a motion to dismiss on this basis.

Under Rule 12(b)(1), a district court must dismiss a complaint when the court lacks subject matter jurisdiction, which includes when a plaintiff lacks constitutional standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under [Rule] 12(b)(1)."). To satisfy Article III standing, a plaintiff must show that (1) he has suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged actions of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–339 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The party attempting to invoke a court's jurisdiction bears the burden of proof for establishing jurisdiction. *See Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

### IV.   DISCUSSION

Defendants move to dismiss this case because Stewart lacks Article III standing to assert his claims. (Mot. 4–7.) Stewart disagrees. (Opp'n ¶¶ 21–23.)

As noted, to establish standing under Article III of the U.S. Constitution, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61). "[A]t the pleadings stage, the plaintiff must allege sufficient facts that, taken as true, 'demonstrat[e] each element' of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (second alteration in original) (quoting *Spokeo*, 578 U.S. at 338). "If the plaintiff fails to do so, the complaint is subject to dismissal at the outset either upon motion by the defendant under Federal Rule of Civil Procedure 12(b)(1) or upon the court's own inquiry." *Id.*

   1.   *California Values Act*

Stewart argues that the California Values Act—which designates California as a "sanctuary state"—has placed a "heavy burden . . . on California taxpayers" by "draining . . . public resources," (FAC ¶ 19), and "cost innocent lives," (*id.* ¶ 23). On the latter point, Stewart ties violent crimes purportedly committed by "illegal aliens" and "the fentanyl crisis and illicit drug trade" to the California Values Act. (*Id.* ¶¶ 23–29.) He also alleges that Defendants "have failed and refuse[d] to do their duty in defending the State of California from an invasion." (*Id.* ¶ 62.)

To establish Article III standing, a plaintiff's "injury must be 'concrete' to ensure that it is 'real and not abstract,' and 'particularized' so that it 'affect[s] the plaintiff in a personal and individual way' as opposed to a 'generalized grievance.'" *Kumar v. Koester*, 131 F. 4th 746, 751–52 (9th Cir. 2025) (alteration in original) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024)). Additionally, standing generally "cannot be based on a plaintiff's mere status as a taxpayer." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (rejecting "the general proposition that an individual who has paid taxes has a continuing, legally cognizable interest in ensuring that those funds are not used by the Government in a way that violates the Constitution" (cleaned up)). A "taxpayer must allege 'direct injury,

pecuniary or otherwise' to have taxpayer standing under Article III." *Villa v. Maricopa County*, 865 F.3d 1224, 1229 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Asarco Inv. v. Kadish*, 490 U.S. 605, 613–14 (1989)).

Here, Stewart has not pleaded an injury-in-fact as to the California Values Act. His complaints about general harm to taxpayers and draining of public resources do not qualify as an Article III injury. *See, e.g., id.* ("[S]tatus as a taxpayer does not confer standing to seek prospective relief against Defendants."). As to these and any other purported injuries, Stewart fails to contend that *he* "suffer[ed] direct and particularized harms due to the" California Values Act. *Sisley v. U.S. Drug Enf't Admin*, 11 F.4th 1029, 1034 (9th Cir. 2021). Rather, he lodges "a generalized grievance against allegedly illegal government conduct," which is insufficient to confer standing. *Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003). Stewart all but confirms the generalized nature of his grievance in his Opposition, where he states that he seeks to "redress rights . . . to bring the attention of this government [to] the wrongs that [he] believes should be corrected." (Opp'n ¶ 23.)

Accordingly, Stewart lacks Article III standing to bring his challenge to the California Values Act.

    *2.    SB 1174*

Through his second challenge, Stewart seeks a declaration that he "has been injured, by having his vote disparage[d] by illegal aliens, and non-citizens, that have been allowed to vote in th[e] 2024 election," based on SB 1174. (FAC, Prayer ¶ 3.) In his Opposition, Stewart claims that "Illegal Aliens voting" in elections "abridge[d] the rights of the Plaintiff in silencing and disparaging [his] voice in the 2019 election and the 2024 election." (Opp'n ¶ 23.) However, Stewart ignores that SB 1174 could not have "diluted" or "silenced" his "vote" or "voice" in the 2019 or 2024 elections because the law did not take effect until *after* the 2024 election. *See* 2024 Cal. Stat. 7948 (signed Sept. 29, 2024); Cal. Const. art. IV, § 8(c)(1) (providing that "a statue enacted at a regular session shall go into effect on January 1 next following a 90-day

period from the date of enactment of the statute"); (*see also* FAC ¶ 67 (noting effective date was January 1, 2025).)

Nor does Stewart allege any potential future harm from SB 1174 to "establish a sufficient likelihood of future injury." *FDA*, 602 U.S. at 381 (reciting injury-in-fact requirement for prospective relief). SB 1174 does not permit local governments to require voter identification, unless otherwise mandated by state or federal law. Cal. Elec. Code § 10005. Therefore, at minimum, Stewart would have had to allege (1) that he plans to vote in a future election, (2) that there is a jurisdiction which would have a voter identification requirement but for SB 1174, and (3) that there is a sufficient likelihood that because that jurisdiction will not have a voter identification requirement, incremental non-citizens will vote such that it will "dilute" his "vote" or "silence" his "voice." Given that California does not allow non-citizens to vote, *see, e.g.*, Cal. Elec. Code § 2300(a), Stewart also fails to allege how non-citizens voting because of SB 1174 would be a result of more than "the mere fact that some invalid ballots have been inadvertently counted." *Elec. Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1089 n.13 (9th Cir. 2024) (holding that "the mere fact that some invalid ballots have been inadvertently counted, without more, does not suffice to show a distinct harm to any group of voters over any other" to support a vote dilution claim). Accordingly, Stewart lacks Article III standing to bring this challenge to SB 1174.[3]

Stewart does not ask for leave to amend and, in any event, "amendment would be futile," so dismissal is without leave to amend. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). To the extent Stewart could amend

---

[3] Stewart also challenges "the criminal program called the Motor Voter Act that was signed by Bill Clinton in 1993." (Opp'n ¶ 7.) Even if Stewart had standing to bring this claim, he raises this for the first time in his Opposition, so these allegations cannot save his complaint. *See Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers . . . ."). Had Stewart brought this claim in the First Amended Complaint, it would still fail because the Motor Voter Act is a federal statute, (Opp'n ¶ 7), and Stewart sues state officials, who are the wrong defendants for such a challenge.

to allege the above, such allegations would be "conjectural," and he would be unable to allege that his injuries are "fairly traceable" to SB 1174 and that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Spokeo*, 578 U.S. at 338–339; (*cf.* Opp'n ¶ 9 (arguing that 1.5 million non-citizens voted in the 2019 and 2024 elections *before* SB 1174 took effect).) However, because Stewart lacks Article III standing, dismissal is without prejudice. *Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice.").

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** the First Amended Complaint **without leave to amend** and **without prejudice**. (ECF No. 18.) The Clerk shall close the case.

**IT IS SO ORDERED.**

June 6, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**